# UNITED STATES DISTRICT COURT
for the
District of New Mexico

FILED
United States District Court
Albuquerque, New Mexico

Mitchell R. Elfers
Clerk of Court

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>4719 GLENDALE RD NW, ALBUQUERQUE, NM 87105 | )<br>)<br>)  Case No. **23 MR 2220**<br>)<br>)<br>) |

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ District of ___New Mexico___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. § 1324 | Bringing in and harboring certain aliens |
| 18 U.S.C § 1203 | Hostage Taking |

The application is based on these facts:

See affidavit incorporated by referrence

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Kevin Rinehart, HSI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by ~~Telephone~~ *(specify reliable electronic means)*.

Electronically signed and telphonically sworn.

Date: 11/30/2023

*Judge's signature*

City and state: Albuquerque, NM

Hon. Jennifer M. Rozzoni, US Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE PREMISES LOCATED AT 4719 GLENDALE RD NW, ALBUQUERQUE, NEW MEXICO, 87105 | Case No. _____<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, Kevin Rinehart, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

I make this affidavit in support of an application for a search warrant under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search the premises known as 4719 Glendale Rd NW, Albuquerque, New Mexico, hereinafter "TARGET PREMISES" further described and depicted in Attachment A, for the things described in Attachment B.

I am employed a Special Agent with the Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations (HSI), Albuquerque, New Mexico and have been employed in this position since September 2018. I am an investigative law enforcement officer of the United States, and I am empowered by law to conduct investigations and make arrests for felony offenses. I successfully completed twelve weeks of Criminal Investigator Training Program, and the Homeland Security Investigations Special Agent Training at the Federal Law Enforcement Training Center in Brunswick, Georgia. I am also a graduate of the South Carolina Criminal Justice Academy Basic Law Enforcement Training Program (BLE 549) and have served as a certified law enforcement officer in various capacities since 2009. I hold a bachelor's degree *cum laude* in History from Marietta College.

I am authorized to investigate violations of Titles 8, 18, and 19 of the United States Code and am designated as an immigration officer under Title 8 and a customs officer under Title 19 with full authorities to investigate and enforce the immigration and customs laws and regulations of the United States.

In addition to my training and experience, I have developed information I believe to be reliable from additional sources including, but not limited to:

a. Information provided by Special Agents ("SA"), Intelligence Research Specialists (IRS) of the Department of Homeland Security, and other law enforcement officials ("Agents"), including oral and written reports that I have received directly or indirectly from said investigators;

b. Sources of Information (SOIs)

c. Results of physical surveillance conducted by agents during this investigation;

d. A review of telephone toll records and subscriber information;

e. Information derived from consensually recorded conversations;

f. A review of driver's license and automobile registration records;

g. Records from commercial databases; and

h. Records from the National Crime Information Center ("NCIC").

Because this Affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only those facts that I believe are relevant to the determination of probable cause to support the issuance of the requested warrant. When the statements of others are set forth in this Affidavit, they are set forth in substance and in part.

Based on the facts set forth in this Affidavit, there is probable cause to believe that violations of 8 U.S.C. § 1324 and 18 U.S.C § 1203, have been committed, are being committed, and will continue to be committed using the TARGET PREMISES.

## RELEVANT CRIMINAL STATUTES

I believe there is probable cause that the SUBJECT has committed, are committing, and will continue to commit offenses involving violations of:

8 U.S.C. § 1324 – Bringing in and harboring certain aliens

18 U.S.C § 1203- Hostage Taking

## EVIDENCE SOUGHT DURING SEARCH

Based on my training, experience, and participation in this and in similar investigations, I believe that individuals involved in human smuggling of undocumented non-citizens often conceal evidence of their activities in their residences and businesses, or the residences of friends or relatives, and in surrounding areas to which they have ready access such as garages, carports and outbuildings. They also conceal evidence in vehicles, including vehicles outside of their residences and businesses, so that they have ready access to it and so that they can hide it from law enforcement, including law enforcement officers executing search warrants at their residences or businesses. Evidence also may be found in other areas to which a human smuggler has ready access, such as rented storage areas and safety deposit boxes, or buried underground on their property. This evidence, which is discussed in detail in the following paragraphs, includes undocumented persons hiding in storage sheds or outbuildings, items typically found in possession of undocumented persons such as fraudulent forms of identification, foreign currency, fraudulent immigration documents, records, human smuggling stash house secondary locations, proceeds from human smuggling, and valuables obtained from proceeds.

Human smugglers often travel domestically and internationally to facilitate their human smuggling efforts. Evidence of foreign and domestic travel by persons engaged in illegal human smuggling includes travel itineraries, airline tickets, receipts, passports, and visas. These items are stored by human smugglers on their person or in their business, residences and surrounding garages, outbuildings, carports and yards, the residences of relatives and in cars. Many of these items are accessible via the internet and can be downloaded and saved on a computer or digital media and on storage media. The term "digital media" includes personal digital assistants (PDAs), smartphones, tablets, BlackBerry devices, iPhones, iPods, iPads, digital cameras, and cellular telephones. The term "storage media" includes any physical object upon which electronic data can be recorded, such as hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media or digital medium.

Human smugglers often use storage facilities for items related to human smuggling and human trafficking that are at a location away from their residences and businesses. These off-site storage facilities are often commercial storage lockers and rooms. These locations are often used to store or hide people, the personal belongings of illegally smuggled undocumented non-citizens, money, fraudulent documents, and valuables obtained through their illegal proceeds. Human smugglers often keep documents and other items tending to show the existence of other fraudulent documents, materials used to produce fraudulent documents, and valuables obtained through illegal proceeds in areas such as storage facilities. Those documents and other items include rental agreements, receipts, keys, notes, and maps specifically concerning off-site storage rooms, routes to additional "human stash houses" or "safe houses", lockers, and safety deposit boxes. This evidence may be found on their person or in their businesses, residences and surrounding garages, outbuildings, carports and yards, the residences of friends or relatives, and

cars.  This type of documentation can be stored on digital media and concealed virtually anywhere.

Evidence of significant, unexplained income of human smugglers, or for the acquisition and concealment of money and assets of human smuggling efforts, can be found on banking and investment account statements, credit card account statements, canceled checks, money orders, deposit slips, check and savings books, business and personal ledgers, accounting records, safe deposit box records and keys, federal and state tax records, rental receipts, rental agreements, utility bills, overnight mail receipts, telephone bills, loan statements records reflecting ownership of real or personal property (such as deeds of trust or vehicle registration, insurance, and ownership information), vehicle and property rental records, lease and purchase agreements, and canceled mail.  These records can be maintained on paper, but also can be maintained as electronic data on computers and other digital media.  The above items are typically kept by human smugglers on their person or in their businesses, residences and surrounding garages, outbuildings, carports, and yards, the residences of friends or relatives, and vehicles.

The use of digital media, including smartphones, tablets, cellular phones, and digital devices, has become part of everyday life. This is also true for human smuggling organizations. Information stored in electronic form on all of the above devices can provide evidence of human smuggling and/or drug trafficking. Human smugglers frequently use some or all of these devices to communicate with co-conspirators, and others involved in the human smuggling trade. These communications include, but are not limited to, phone calls, text messages, SMS (Short Message Service) messaging, MMS (Multimedia Messaging Service) messaging, social media posts and messaging, and smartphone application messaging services. Smartphones, tablets, cellular phones, and digital devices are frequently capable of storing messages, emails, social media

communications, and communications made over smartphone applications. The content of these communications will often provide evidence of human smuggling. Numbers stored on a telephone (such as Caller ID lists reflecting recently received calls, speed dial lists of names and/or telephone numbers, and logs of outgoing and incoming calls) can provide evidence of who the human smuggler is calling, and thus the identity of potential associates.

Human smuggling organizations often maintain firearms and ammunition on their person or in their homes, businesses or cars to protect themselves, the undocumented persons they are smuggling into or across the United States, their associates, and their profits. They also may maintain indicia of firearms such as receipts for firearms and ammunition, boxes for firearms and ammunition, firearms cleaning supplies, and instruction manuals and other documentation for firearms and ammunition. I know that weapons (including rifles, shotguns, and handguns) are tools of the trade for human smugglers, who often keep firearms in close proximity to themselves and their contraband to protect them from other smugglers and law enforcement.

Documents showing who owns, occupies, or controls the location being searched also show who is responsible for the items found on the premises, including contraband, undocumented persons, and other evidence seized. Documents and items showing the identity of the persons owning, residing in, or controlling the area being searched include, but are not limited to, utility and telephone bills, canceled envelopes and correspondence, outgoing answering machine messages, tax returns, keys, deeds and mortgage receipts. These documents may also be produced on computers, downloaded from online accounts or scanned into digital format and stored on computers and related digital media.

Based on my training and experience, particularly my experience relating to the investigation of properties such as the one listed in Attachment A, I know that it is common for

human smugglers in such areas to keep evidence of their crimes throughout their properties. I further know that all of the evidence described above could be located not only in the main residence, adjoining or adjacent building sharing the same property, but also in garages, outbuildings, storage containers, safes, safety deposit boxes, sheds, barns, vehicles, and even buried in the ground.

## COMPUTERS, ELECTRONIC STORAGE AND FORENSIC ANALYSIS

As described above and in Attachment B, this application seeks permission to search for evidence and records that might be found on the property of the TARGET PREMISES in whatever form they are found. Much of the evidence and records described in the paragraphs above, and in Attachment B, can also be produced and/or stored on computers, digital media and other storage media, such as computer hard drives, external hard drives, thumb drives, secure digital cards and other types of flash memory cards, compact disks and floppy disks, personal digital assistants (PDAs), smartphones, tablets, BlackBerry devices, iPhones, iPods, iPads, digital cameras, and cellular telephones. For this reason, I submit that if a computer aided digital medium or storage medium is found on the property of the TARGET PREMISES, there is probable cause to believe those records will be stored on that computer or storage medium. Thus, the warrant applied for would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B). Because several people appear to share the TARGET PREMISES, it is possible that the TARGET PREMISES will contain storage media that are predominantly used, and perhaps owned, by persons who are not suspected of a crime. If it is nonetheless determined that it is possible the things described in this warrant could be found on any of those computers or storage media, the warrant applied for would permit the seizure and review of those items as well.

*Necessity of seizing or copying entire computers or storage media.* In most cases, a thorough search of a premises for information that might be stored on storage media often requires the seizure of the physical storage media and later off-site review consistent with the warrant. In lieu of removing storage media from the premises, it is sometimes possible to make an image copy of storage media. Generally speaking, imaging is the taking of a complete electronic picture of the computer's data, including all hidden sectors and deleted files. Either seizure or imaging is often necessary to ensure the accuracy and completeness of data recorded on the storage media, and to prevent the loss of the data either from accidental or intentional destruction. This is true because of the following:

*The time required for an examination.* As noted above, not all evidence takes the form of documents and files that can be easily viewed on site. Analyzing evidence of how a computer has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on premises could be unreasonable. Storage media can store a large volume of information. Reviewing that information for things described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

*Technical requirements.* Computers can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations. Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site. The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on the Premises. However, taking the storage media off-site and reviewing it in a controlled environment will allow its examination with the proper tools and knowledge.

8

*Variety of forms of electronic media.*  Records sought under this warrant could be stored in a variety of storage media formats that may require off-site reviewing with specialized forensic tools.

*Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise copying of computers, cellular devices, and/or storage media that reasonably appear to contain some or all of the evidence described in the warrant and would authorize a later review of the media or information consistent with the warrant.  The later review may require techniques, including but not limited to computer-assisted scans of the computer or entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

## **PROBABLE CAUSE**

On November 30, 2023, at approximately 0751 hours, the Albuquerque Police Department Dispatch was contacted by a Spanish speaking male who advised that 2 female subjects known as "Olga" and "Maria" paid human smugglers to bring them into the United States from Mexico and were being held against their will pending further payments to the human smuggler. The complainant also advised the dispatcher that both females were being held at the TARGET PREMISES at gun point and would not be released until further payments were made to the smugglers. The complainant advised that the smugglers are armed and actively making threats to the safety of the female undocumented non-citizens (UNCs).  HSI agents have attempted to make contact with the complainant multiple times but have been unsuccessful. The complainant called from a landline in Arizona.

Albuquerque Police Department (APD) responded to the TARGET PREMISES and advised HSI of the ongoing and developing situation. HSI responded to the TARGET PREMISES and set up surveillance in conjunction with APD units. I observed that the property was surrounded by a fence and that the front area of the property contained approximately 6 vehicles. At approximately 1000 hours agents observed a sedan enter the premises and a male enter the residence. At approximately 1100 hours I observed a white Ford F150 enter the TARGET PREMISES bearing an unknown temporary tag. Based on my training and experience I know that human smugglers often employ multiple and various vehicles to transport UNCs to stash houses and that the transporters often stay in the stash houses when not actively driving for the human smuggler. I also know that human smugglers often use temporary tags on their vehicles to conceal the true owner of the vehicle from law enforcement.

At approximately 0911 hours APD surveillance units observed a white SUV exit the premises and established mobile surveillance of the vehicle. APD units then performed a traffic stop on the white SUV near the intersection of Bluewater Rd NW and Yucca Dr NW in Albuquerque, NM. APD contacted the driver of the vehicle and identified her via her New Mexico Driver's License as Joanna ANICA with a listed address the same as the TARGET PREMISES. ANICA was released without further incident.

HSI reviewed law enforcement databases for information associated with ANICA and discovered that she was charged on November 14, 2023, with Conspiracy to Enter, Transport, or Harbor Aliens by the United States Border Patrol (USBP).
I was able to review the report from USBP from this incident and ANICA was stopped for a speeding violation by New Mexico State Police near mile marker 11 northbound on I-25. NMSP observed that the black SUV operated by ANICA contained approximately 10 UNCs and called

the USBP for further support and investigation. Ultimately, USBP recovered 7 Mexican nationals, 2 Guatemalan nationals, and 1 Honduran national who all entered the United States illegally without entry or inspection as required by law and charged ANICA.

On December 14, 2022, APD had also previously located and recovered approximately 50 UNCs who were harbored at the TARGET PREMISES. APD Detectives had received a report that a family of Salvadoran nationals was being held hostage in Albuquerque, NM and obtained messages from the reporting party that were threatening the members of the family with harm if further payments were not made. Detectives from APD were able to locate the family on December 14, 2023, after they had successfully escaped from the TARGET PREMISES. The victims were able to identify the TARGET PREMISES as the location they were held against their will and stated that approximately 100 other UNCs were being held at the location prior to their escape. APD Detectives located approximately 50 UNCs inside the residence, including UNCs who were held in a small upstairs bedroom that was locked and had to be forced open by the detectives.

## CONCLUSION

Based on the information and facts set forth in this affidavit, I believe the occupants of the TARGET PREMISES are in violation of Title 8 United States Code, Section 1324, Title 18 United States Code, Section 1203, and are using or have used the TARGET PREMISES in furtherance of these crimes.

Considering the facts set forth in this affidavit, there is probable cause to believe violation of Title 8 United States Code, Section 1324 and Title 18 United States Code, Section 1203 have been committed, are being committed, and will continue to be committed by the occupants of the TARGET PREMISES. Furthermore, I submit there is probable cause to believe

the occupants will continue utilizing the TARGET PREMISES in furtherance of human smuggling related offenses.

Thus, I respectfully request that a warrant be issued authorizing Homeland Security Investigations, with appropriate assistance from other law enforcement officers, to enter the said premises, to include its surrounding storage sheds, vehicles, storage structures, and outbuildings on the property described in ATTACHMENT A, to search for, seize, and examine the items and/or assets set forth above and in ATTACHMENT B.

AUSA Timothy Vasquez reviewed and approved this affidavit.

Respectfully submitted,

Kevin Rinehart
Special Agent, HSI

Electronically submitted and telephonically sworn on November 30th, 2023:

JENNIFER M. ROZZONI
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### Property to be Searched

The TARGET PREMISES is located at 4719 Glendale Rd NW, Albuquerque, NM 87105. The premises is 2 story single family residence located on the north side of the street and is the first residence on the roadway as you travel westbound on Glendale Rd NW from 47th St NW. The structure is brownish tan in color with white trim, 2 front white entry doors with metal security doors, a second story balcony with white wrought iron fencing. The front door to the residence is white in color. The property is surrounded by a masonry fence topped in the front with white wrought iron fencing in the front street adjacent side of the fence.

The search of the above TARGET PREMISES shall be inclusive of all outbuildings and appurtenances of the TARGET PREMISES. The search shall also include vehicles parked at, or in front of, the TARGET PREMISES that have an apparent connection to the TARGET PREMISES.



## ATTACHMENT B

## ITEMS TO BE SEARCHED AND/OR SEIZED

All records, information, and evidence relating to violations of Title 8 USC § 1324 and Title 18 USC § 1203, to include:

1. Illegally smuggled or undocumented persons.

2. Large amounts of currency, financial instruments, precious metals, jewelry and other items of value and/or proceeds of human smuggling transactions.

3. Any and all customer lists, lists of human smuggling payees, lists of persons to be smuggled or lists of persons who have been smuggled illegally into the United States, travel records, smuggler records, or any notes containing the individual names of such persons, telephone numbers, addresses of these customers or other persons to be illegally smuggled, and any corresponding records of accounts receivable, money paid or received, or cash received to pay for human smuggling or intended to pay for human smuggling efforts.

4. Telephone and address books or notes containing telephone numbers and addresses of co-conspirators.

5. Telephone toll records for homes and/or businesses owned or controlled by suspected co-conspirators, or other communication devices used by them and/or their human smuggling associates.

6. Messages, notes, correspondence, and/or communications between human smugglers and their co-conspirators.

7. Any and all financial or other instruments evidencing placement of assets in the names other than the names of the human smugglers themselves.

8. Books, records, receipts, diaries, notes, ledgers, airline tickets, cashier's checks, money orders and other papers relating to the transportation of suspected undocumented non-citizens.

9. Firearms and ammunition, including handguns, rifles, shotguns and automatic weapons.

10. Any and all computers, cellular devices, digital media, and storage media that reasonably appear to contain some or all of the records, information, and/or evidence described in Attachment B. As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data).